UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTE GARDNER, | ) | Case No.: 1:10 CV 183 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| GREAT LAKES CHEESE CO., INC., | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending before the court in the above-captioned case are Defendant Great Lakes Cheese Co., Inc.'s ("Defendant" or "GLC") and Plaintiff Annette Gardner's ("Plaintiff") Cross-Motions for Summary Judgment ("Motions") pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 11 and 12.) Also pending is Defendant's Motion to Strike Affidavits and Exclude Exhibit. (ECF No. 16.) For the reasons set forth below, the court denies Plaintiff's Motion for Summary Judgment in its entirety, grants in part and denies in part Defendant's Motion for Summary Judgment, and grants in part and denies in part Defendant's Motion to Strike Affidavits and Exclude Exhibit.

## I. FACTS AND PROCEDURAL HISTORY

Defendant GLC employs over 2,000 people nationwide, including roughly 500 at its cheese packaging facility in Hiram, Ohio. (Def.'s Mot. for Summ. J., Mem. Supp. 2, ECF No. 11 (citing Def.'s App. 58, 60, ECF No. 11-1.).) It is subject to the Family Medical Leave Act of 1993 ("FMLA"), which entitles qualifying employees to up to 12 weeks, or 480 hours, of unpaid leave

each year. 29 U.S.C. § 2612(a)(1). GLC notifies employees in writing that it uses a "rolling calendar method" to determine the 12-month period in which the 12 weeks of FMLA leave entitlement occurs. (*Id.* at 3 (citing Toumert Dep. 10: 3–7; Def.'s App. 57).) Under this method, each time an employee takes FMLA leave, the remaining leave entitlement is the balance of the 12 weeks which has not been used during the immediately preceding 12 months. (*Id.*)

At GLC, when an employee misses a day of work and does not have vacation, personal time, sick time or FMLA hours to cover the absence, he or she gets an attendance point. Once an employee accumulates 10 points, he or she can be terminated for excessive absenteeism. (Toumert Dep. 14:20–15:5, Def.'s App. 60–61; Barbe Depo. 29:21–23, 52:2–4, Def.'s App. 14, 21; Rodman Dep. 22:18–20, Def.'s App. 66.)

It is undisputed that Plaintiff worked at Defendant's Hiram facility, first as a transporter, and then as a line attendant, from 2005 until she was terminated in August 2009 for excessive absenteeism. (Pl.'s Mot. for Summ. J., Ex. 1, Gardner Decl. ¶ 2, ECF No. 12-1. ) During the period between August 2008 and March 18, 2009, Gardner was employed as a transporter and her schedule included working five nine-hour days per week for a total of 45 hours per week. (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. 5, Gardner Decl. ¶ 2, ECF No. 13-5. ) During her time as a GLC employee, Plaintiff suffered from several medical conditions that limited her ability to attend work, including migraine headaches, a cervical disc displacement, and a lumbar disc displacement. (Gardner Dep. 6:17–9:12, Def.'s App. 34–37, ECF No. 11-1.) With Defendant's approval, she used FMLA leave intermittently beginning in 2006 due to her own medical conditions and those of family members. (*Id.*) Defendant did not, and does not now contest the legitimacy of the conditions that resulted in Plaintiff's

FMLA absences. (Def.'s Mot. for Summ. J., Mem. Supp. 3, ECF No. 11 (citing Toumert Dep. 17, Def.'s App. 62, ECF No. 11-1).)

Both Plaintiff and Defendant kept their own records of Plaintiff's FMLA leave usage. (Barbe Dep. 11–15, Def.'s App. 2–6; Def.'s Mem. Opp'n to Pl's Mot. for Summ. J., Ex. 3, Gardner Depo. 22–26, ECF No. 15-3.) To update and verify her records, Plaintiff occasionally asked management for updates on her available FMLA time. In September of 2008, Plaintiff asked Employment Relations Specialist Stacey Barbe for a written update of her FMLA time. (Gardner Decl. ¶ 4, ECF No. 12-1.) Barbe advised Plaintiff that she would only provide Plaintiff with a written update if Plaintiff shared her personal records, which she did. (*Id.*) Barbe thereafter provided Plaintiff with a spreadsheet of FMLA time that Plaintiff had taken from October 2007 to September 16, 2008. (*Id.*) Some time in June of 2009, Plaintiff verbally requested an FMLA leave update from Barbe; Barbe provided a verbal response. (Pl.'s Mot. for Summ. J, Ex. 2, Barbe Dep. 20:3–20:23, ECF No. 12-2.) On or around July 20, 2009, Plaintiff verbally requested an FMLA update via telephone from Manager Bill Rodman; Rodman never responded, either verbally or in writing. (Gardner Dec. ¶ 6, ECF No. 12-1.) Plaintiff made this request following her husband's brain surgery on July 18, 2009; she planned on using personal leave time as well as FMLA time to care for her husband. (Gardner Dep. 22:12–23:4, ECF No. 15-3.)

On August 18, 2009, Plaintiff's employment was terminated by GLC management after Ms. Barbe updated employee absences into GLC's system and the software alerted her that Plaintiff had exceeded her FMLA leave. (Barbe Dep. 25:4–38:8, Def.'s Appx. 10–15.) The decision to terminate Plaintiff was made after Ms. Barbe consulted with Plaintiff's Manager, Bill Rodman, and the Director

of Human Resources, Mary Jo Toumert, and the company's attendance records were reviewed. (*Id.*) By Plaintiff's count, she took 445 hours of FMLA leave in the disputed 12-month span of August 11, 2008, to August 11, 2009. (Pl.'s Mot. for Summ. J, Ex. 7, Gardner FMLA Tracking Sheet, ECF No. 12-7.) By Defendant's count, based on employee records later consolidated into a spreadsheet, she used 491.43 hours of FMLA leave in that span, exceeding GLC's 10- point maximum on August 11, 2009, for a total of 10.25 absence points. (Def.'s App. 33, ECF No. 11-1.) Defendant's records indicate that Plaintiff incurred an additional 0.5 absence point on August 13, 2009, when Plaintiff took 3.2 hours of unavailable FMLA time, placing her at total of 494.63 FMLA hours in a 12-month span. (*Id.*) Defendant notes that Plaintiff first exceeded the 480 hours maximum on July 24, 2009, and that she remained employed because no one at GLC noticed at that time. (Def.'s Mot. for Summ. J., Mem. Supp. 13 (citing Barbe Dep. 48:2–11, 53:7–11, Def.'s App. 18, 22).)

On January 26, 2010, Plaintiff filed the instant suit, alleging violations of the FMLA. (Compl., ECF No. 1.) Plaintiff's Complaint contains two counts. Count One alleges Defendant interfered with her rights under the FMLA by (a) not providing her with notice of her total FMLA hours following a request to a plant manager, and (b) by firing her for excessive absenteeism even though Plaintiff had available FMLA time to cover absences on August 10 and 11, 2009. (Compl. ¶¶ 14–20.) Count Two alleges Defendant retaliated against Plaintiff by terminating her because she took legally protected medical leave under the FMLA, and that Plaintiff was terminated pursuant to a discriminatory policy. (*Id.* ¶¶ 21–27.)

Both parties have filed Motions for Summary Judgment–Defendant on November 24, 2010 (ECF No. 11), and Plaintiff on December 6, 2010. (ECF No. 12.) Plaintiff's Motion included

declarations from two former GLC employees regarding difficulties they faced in obtaining FMLA time updates from Human Resources, particularly from Ms. Barbe. (Pl.'s Mot. for Summ. J., Ex. 8, Decl. of Darcell Hobbs, ECF No. 12-8, and Ex. 9, Decl. of Gene Robert Lilly, ECF No. 12-9.) On January 8, 2011, Defendant GLC filed a Motion to Strike the aforementioned affidavits (ECF No. 16), as well as its Opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 13.) Plaintiff's opposition to Defendant's Motion for Summary Judgment was filed on December 24, 2010. (ECF No. 13.) Both parties filed Replies–Plaintiff on January 23, 2011 (ECF No. 17), and Defendant on January 24, 2011. (ECF No. 20.)

## II. LAW AND ANALYSIS

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, the court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the court must decide "whether reasonable jurors could find by a

preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence" to overcome summary judgment; it is not enough to show that there is slight doubt as to material facts. *Id.*

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e).

## III. LEGAL ANALYSIS

### A. Defendant's Motion to Strike Affidavits and Exclude Exhibit

Defendant requests that this court strike the affidavits of two former GLC employees and to exclude Exhibit 3 of Plaintiff's Motion for Summary Judgment, which is a document prepared by Defendant relating to Plaintiff's application for unemployment benefits. (ECF No. 16.) Defendant argues the affidavits should be stricken because both documents are "irrelevant and prejudicial." (Def.'s Mem. Supp. 2, ECF No. 16.) Defendant contends that Exhibit 3 should be excluded as a matter of law under Ohio Revised Code § 4141.21. (*Id.*) For the following reasons, the court denies Defendant's Motion as it pertains to the affidavits and grants the Motion as it pertains to Exhibit 3.

Under the Federal Rules of Evidence, evidence is inadmissible if it is not relevant, or if relevant, its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [] misleading the jury, [] considerations of undue delay, [or] waste of time. . . ." *See* FED. R. EVID. 402 and 403. Defendant contends that the affidavits of two former employees are inadmissible under Rules 402 and 403. To her Motion for Summary Judgment, Plaintiff attached the affidavits of former GLC employees Darcell Hobbs ("Hobbs") and Gene Lilly ("Lilly"). In these affidavits, both Hobbs and Lilly state that they had difficulty obtaining information from GLC's Human Resources Specialist Barbe regarding their FMLA leave status. These affidavits are relevant to Plaintiff's case because they support Plaintiff's factual allegations for Count One—that GLC did not comply with the FMLA's notice requirements. (*See* Compl. ¶¶ 10, 16.) Further, the court finds that the affidavits are not unfairly prejudicial to the Defendant, who had opportunity to respond and/or provide facts regarding GLC's policy and procedure for FMLA updates. Therefore, the court will not strike the affidavits.

Ohio Revised Code § 4141.21 prohibits "information maintained by the director of job and family services" from being used in "any court in any action or proceeding pending . . . or . . . admissible in evidence in any action. . . ." Defendant argues that pursuant to § 4141.21, the court must exclude Exhibit 3, a document submitted by Defendant to the Ohio Department of Job and Family Services in relation to Plaintiff's application for unemployment benefits. Plaintiff argues that § 4141.21 does not exclude Exhibit 3 in a wrongful termination action and cites to an Ohio court of appeals case, *Daff v. Bldg. Suppliers, Inc.*, No. 23396, 2007 WL 1827626 (Ohio Ct. App. June 27, 2007). In *Daff*, the court of appeals found that the trial court abused its discretion when it excluded a document similar to Exhibit 3 under § 4141.21. *Id.* The *Daff* court noted that the Ohio Supreme Court had not yet addressed whether § 4141.21 governed such documents, but determined that the plain language of the section, along with relevant case law, supported its decision to overturn the trial court's ruling. *Id.* at *12. While the court finds the reasoning in *Daff* sound, it declines to allow Exhibit 3 into evidence on this basis. Instead, as Plaintiff argues in the alternative, the court will draw from Barbe's deposition, in which she testified to the relevant information contained in Exhibit 3. (*See* Pl.'s Mot. for Summ. J., Ex. 2, Barbe Depo. 39–40, ECF No. 12-2.) The court grants Defendant's Motion on this basis.

**B. The Family Medical Leave Act**

The FMLA permits employees to take up to twelve weeks of unpaid leave annually if they have a serious health condition, or if they need to care for a relative with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). FMLA leave may be taken in blocks of time or intermittently. *Id.* at §

2612(b). An employer may require an employee requesting leave to provide certification from a doctor documenting the need for FMLA leave. *Id.* at § 2613(a).

By regulation, employers are subject to certain employee notice requirements. Pursuant to 29 C.F.R. § 825.300(d)(6),

> The employer must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement. . . . The notice of the amount of leave counted against the employee's FMLA entitlement may be oral or in writing. If such notice is oral, it shall be confirmed in writing, no later than the following payday (unless the payday is less than one week after the oral notice, in which case the notice must be no later than the subsequent payday).

29 C.F.R § 825.300(d)(e) further provides that

> Failure to follow the notice requirements set forth in this section *may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights*. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered (*see* § 825.400(c)).

(emphasis added).

Two distinct theories of recovery arise under the FMLA: interference (also called "entitlement") and retaliation (also called "discrimination"). *See Arban v. West Pub. Co.*, 345 F.3d 390, 400–401 (6th Cir. 2003) (explaining both theories of recovery). To establish a case of interference, an employee must show:

> (1) he is an "eligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "employer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); 29 U.S.C. § 2615(a)(1) (interference with rights). To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is evidence of a causal connection between his exercise of an FMLA right and the adverse employment decision. *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001); 29 U.S.C. § 2615(a)(2) & (b) (discrimination). Section 2617(a) imposes liability on "[a]ny employer who violates [29 U.S.C. § 2615]," and provides an individual right of action to sue in state or federal court. 29 U.S.C. § 2617(a)(1), (a)(2).

**C. Plaintiff's Claims Under the FMLA**

***1. Count One: Interference with Plaintiff's FMLA Rights***

Plaintiff argues there is no genuine issue of material fact regarding Count One for two reasons: (1) based on the 365-day "rolling" calendar method Defendant used to calculate FMLA hours, Plaintiff had FMLA hours "coming back" to her on August 10 and 11, 2009, so those absences could not legally serve as the basis for her firing. (Pl.'s Mot. for Summ. J., Mem. Supp. 8–14, ECF No. 12.); and (2) the record demonstrates that Defendant's policy on providing (or not providing) FMLA updates in response to employee requests violates the FMLA and that Defendant interfered with Plaintiff's FMLA rights by failing to provide Plaintiff with a requested FMLA leave update, resulting in her termination. (*Id.* at 8–11.)

Defendant argues there is no genuine issue of material fact as to Count One because "the undisputed evidence is that at the time of her termination Plaintiff had used FMLA qualifying time far in excess of what the law provides." (Def.'s Mot. for Summ. J., Mem. Supp. 2, ECF No. 11.)

Further, Defendant argues that liability does not attach for its failure to provide notice under 29 C.F.R § 825.300(d)(6) because Plaintiff has failed to demonstrate that she was prejudiced by the alleged violation. (Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. 7–9, ECF No. 15.) Defendant argues no prejudice was possible in this case because Plaintiff "admits that she did not care what Defendant's tracking of her FMLA time was because she intended to rely on her own records." (Def.'s Reply to Pl.'s Opp'n 3, ECF No. 20.) The standard for recovery requires the plaintiff to show that she was prejudiced by the lack of information. *See Edgar*, 443 F.3d at 508.

As an initial matter, Plaintiff is not entitled to summary judgment as to the issue of whether she was entitled to FMLA leave for the absences that placed her over GLC's 10-point maximum. As noted above, the FMLA allows a "rolling" calendar method for calculating an employee's statutory leave entitlement, and this calculation method was adopted and utlized by GLC. Under this method, an employee's available leave time depends on how much of the allotted 12 weeks of absence he or she has used in the previous 365 days. As soon as an FMLA absence becomes more than 365 days old—which occurs on the one-year anniversary of the absence—it no longer counts toward the employee's total, so he or she essentially has those hours "coming back" in the form of newly available leave time.

Under this calculation method, Plaintiff argues she "had sufficient FMLA time coming back to her on August 10 and 11, 2009, based on FMLA absences on August 8 and 11 in the prior year. This fact alone is sufficient to demonstrate that Plaintiff did have available FMLA hours to use for her absences of August 10-11, 2009"–regardless of whether she had earlier exceeded the 480 maximum. (Pl.'s Mot. for Summ. J., Mem. Supp. 12–13, ECF No. 12.) Moreover, Plaintiff points to several

discrepancies and possible errors in Defendant's records and alleges that even Defendant's own figures, once corrected, show she was below her maximum FMLA entitlement on August 11, 2009. Specifically, she alleges the following problems with Defendant's calculations: (1) the calculations are based only on a 40-hour work week, and do not account for the fact that Plaintiff sometimes worked 45-hour weeks, and thus was entitled to more FMLA leave; (2) Defendant incorrectly added an additional hour of FMLA leave for Plaintiff's September 16, 2008, absence; (3) Defendant's spreadsheet tally of Plaintiff's FMLA hours lists absences on September 17 and September 25, 2008, but Defendant's other employee records do not show Plaintiff taking any FMLA leave on those days; and (4) Defendant's spreadsheet tally of Plaintiff's FMLA hours includes an eight-hour absence on August 25, 2008, but one of Defendant's employee records shows only a four-hour absence on that date. (Pl.'s Opp'n to Def.'s Mot. for Summ. J 6–12, ECF No. 13.) Taken together, these subtractions would leave Plaintiff with 478.84 FMLA hours on August 11, 2009—fewer than the 480 she was allowed based on her work schedule. (*Id.* at 13.)

Defendant does not address these individual discrepancies and potential errors in its records, but instead notes in its Reply Brief that even using Plaintiff's "corrected" total, she still exceeded the 480-hour maximum on August 13, 2009, when she took an additional 3.2 hours of leave. (Def.'s Mem. Opp'n to Pl.'s Mot. for Summ. J. 4, ECF No. 15.) Defendant's printout indicates that, for this last absence, Plaintiff incurred an additional 0.5 absence points, which would still place her above the 10-point maximum even if the points for the August 10 and 11 absences were deducted. (Def.'s App. 33, ECF No. 11-1.) In her Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff failed to respond to this point or identify anything in the record that creates a

genuine issue of material fact regarding whether Plaintiff had exceeded her FMLA leave allotment and GLC's 10-point system at the time of her firing on or about August 18, 2009. In the absence of a genuine issue of material fact regarding whether Plaintiff was entitled to FMLA leave during the absences that led to her termination, Defendant's Motion for Summary Judgement as to this claim is granted, and Plaintiff's Motion for Summary Judgment as to this claim is denied. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989) (summary judgment in favor of movant appropriate upon showing of non-movant's lack of proof). The court however, grants summary judgment on this issue in favor of Defendant on a conditional basis only, because the effect of the August 13, 2009 leave was raised by Defendant in its Opposition to Plaintiff's Motion for Summary Judgment and not in its own Motion for Summary Judgment. Out of fairness to Plaintiff, the court grants Plaintiff 10 days from the date of this Order to respond to this point.[1]

By contrast, whether GLC is liable to Plaintiff for failure to provide her with notice of her leave entitlement presents a genuine issue of material fact, and therefore neither party is entitled to summary judgment on this claim. In this case, the parties dispute whether Plaintiff was prejudiced by Defendant's failure to provide Plaintiff with an update of her FMLA status when she requested them. The FMLA requires employers to provide leave updates in writing, or if provided verbally, to confirm them in writing soon thereafter. 29 C.F.R. § 825.300(d)(6). Barbe testified that after providing Plaintiff with a written update in September 2008, she provided verbal updates in response to Plaintiff's verbal inquiries in October 2008 and June 2009. (Def.'s Mot. for Summ. J., Mem. Supp.

---

1 The court notes that Plaintiff did not address this fact in its Reply in support of its own Motion for Summary Judgment.

10, ECF No. 11.) Plaintiff alleges she made another request in July 2009 and received no response. (Gardner Decl. ¶ 6, ECF No. 12-1.)

The Sixth Circuit has held that "the FMLA is not a strict-liability statute. . . . Employees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." *Edgar*, 443 F.3d at 508. In its Motion for Summary Judgment, Defendant argues no prejudice was possible in this case for Plaintiff "admits that she did not care what Defendant's tracking of her FMLA time was because she intended to rely on her own records." (Def.'s Reply to Pl.'s Opp'n 3, ECF No. 20.) Defendant cites several assertions within Plaintiff's deposition to support this argument. (*Id.* (citing Gardner Depo. at 22–26, 37–38, 49–50, and 59:8–25[2]).) In one portion, Plaintiff states:

> A. . . . I kept accurate records so I know - - I knew exactly when I had time coming back and when I didn't and how many hours that I had coming back at a time. . . .
>
> Q. Okay. So your - -
> A. I don't care what GLC's tracking sheets say. Mine are accurate. Theirs are not.
>
> Q. So it doesn't matter to you in your mind there's absolutely no possibility that you could have made a mistake?
>
> A. No, not a one.

(Gardner Depo. 49:21–50:9, Def.'s App. 49–50, ECF No. 11-1.) Defendant supports this argument by noting that Plaintiff took no further steps to obtain FMLA status information after not receiving the updates she had requested. (Def.'s Reply to Pl.'s Opp'n 5, ECF No. 20.) The court, however, must

---

[2] The court notes that Defendant has only provided a portion of the Plaintiff's testimony, which does not give the full context of her statements.

draw inferences against the non-moving party, and in this case, Defendant selectively cites to portions of Plaintiff's deposition, providing only excerpts to the court. Other portions of the deposition show there are genuine issues of material fact as to prejudice. Specifically, Plaintiff's last verbal request to Manager Bill Rodman took place when Plaintiff was caring for her husband following his brain surgery:

> Q. What was Bill Rodman's response?
>
> A. That he would take care of it. Not to worry about it. He would take care of it. And that he would give me Monday through Friday personal leave and then the week following I would have to use my FMLA hours.

(Gardner Depo. 23:5–12, ECF No. 15-3.)

When asked why she did not follow up with Rodman, Plaintiff indicated:

> A. No, because Bill Rodman said he would take care of it.

(*Id.* at 25:14–14.) Further, Plaintiff responded:

> Q. And you didn't do anything to get it, correct?
>
> A. Correct. Well, no, I'm not going to leave my husband in the bed after having brain surgery to drive another hour and 40 minutes to get a copy of my FMLA hours.

(*Id.* at 25:25–26:6).

While Plaintiff's assertions from her deposition indicate a belief that her own records were superior to Defendant's, that does not necessarily mean she would have ignored any discrepancies between her records and Defendant's had she been apprised of them while still employed at GLC. If Defendant's logic were correct and Plaintiff intended to rely exclusively on her own FMLA calculations, she would have had no reason to request updates at all. Therefore, the court finds that summary judgment on this issue in favor of Defendant is not appropriate.

Plaintiff also moved for summary judgment on the issue of liability for failure to provide notice of available FMLA time. The court finds that summary judgment in favor of Plaintiff is not appropriate either. In support of her Motion, Plaintiff proffered to affidavits from former GLC employees regarding difficulties they have had in obtaining updates from Ms. Barbe. However, Plaintiff's last request for an update was made to Manager Bill Rodman, and not to Ms. Barbe. Drawing inferences against the non-moving party, the court cannot reach the conclusion that the "record clearly demonstrates that Defendant's policy on providing (or not providing) FMLA updates in response to employees requests violates the law." (Pl.'s Mot. for Summ. J., Mem. Supp. 11, ECF No. 12.) Moreover, the court notes that witness credibility questions are involved, and thus, summary judgment in favor of Plaintiff is not appropriate. A factfinder must determine not only whether the affiants are credible, but also whether Plaintiff is credible and whether she would have acted in the same manner had she received a verbal update from Mr. Rodman. Lastly, by failing to provide the written FMLA updates called for by the Act, Defendant *may have* caused Plaintiff harm, and the factfinder must also determine whether Defendant did cause such harm. For the above reasons, neither party is entitled to summary judgment on the issue of whether liability can attach to GLC for its failure to provide notice of available FMLA time.

**2. Count Two: Retaliation Against Plaintiff**

29 U.S.C. § 2615(a)(2) provides that:

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

A plaintiff who does not have direct evidence of retaliation can establish a *prima facie* case by showing that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse

employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)). To show a "causal connection," a plaintiff must proffer some evidence from which a reasonable jury could conclude that he or she was terminated for exercising FMLA rights. *See, e.g.*, *Bryson*, 498 F.3d at 570 (finding that "proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection.")

Plaintiff moves for summary judgment, alleging that she can establish her retaliation and discrimination claim "with direct evidence: (1) she engaged in the statutorily protected activity of taking and attempting to take FMLA leave; (2) she was terminated; and (3) there was undisputedly a causal connection between the termination and the protected activity." (Pl.'s Mot. for Summ. J., Mem. Supp. 15, ECF No. 12.) She also alleges that Defendant's rehire eligibility policy, which rates discharged employees based on attendance and performance, shows hostility toward employees who take FMLA leave. (*Id.* at 16.)

Plaintiff's first argument depends on the outcome of Count One. If Plaintiff had in fact exceeded her maximum allotment of FMLA prior to her termination, the allegation that she engaged in "statutorily protected activity" fails. Plaintiff argues that "[t]he points that placed Plaintiff over the limit, however, were points she allegedly accrued for taking leave on August 11, 2009. Defendant's reason for termination is clearly illegitimate because the August 11, 2009 absence for which it awarded attendance discipline points were FMLA protected." (*Id.* at 15.) However, as the court noted above in its partial grant of summary judgment in favor of Defendant, Defendant argued in its

Opposition to Plaintiff's Motion that even assuming Plaintiff's allegations of discrepancies and errors in Defendant's records are true, Plaintiff still exceeded her FMLA allotment and GLC's 10-point system by taking additional time off on August 13, 2009. (Def.'s Mem. in Opp'n 4, ECF No. 15.) Plaintiff did not respond to this point.

With respect to Plaintiff's discriminatory policy argument, Plaintiff does not demonstrate the policy is inherently hostile toward employees who take protected FMLA leave. Plaintiff states that "any employee who suffers from an FMLA-qualifying serious health condition and is terminated *for exceeding his or her allowed twelve weeks of leave* would automatically be precluded from being rated an 'excellent' performer based upon the fact that the person was terminated for attendance." (Pl.'s Mot. for Summ. J., Mem. Supp. 17 (emphasis added), ECF No. 12.) However, once an employee exceeds 12 weeks of permissible FMLA leave, he or she is no longer protected by the FMLA, and thus the employer may legally take attendance into account when evaluating that individual. Viewing the evidence and drawing inferences in the light most favorable to Defendant, summary judgment in favor of Plaintiff is not appropriate.

Defendant also moved for summary judgment as to Plaintiff's retaliation and discrimination claim, noting that "Plaintiff did not have protected leave at the time she was terminated." (Def.'s Mot. for Summ. J., Mem. Supp. 13, ECF No. 11.) Defendant then argues, in the alternative, that if Plaintiff engaged in a protected activity, she still cannot show a causal connection between the activity and her termination. (*Id.* at 14.) Again, as the court held above, because the effect of Plaintiff's final absence on August 13, 2009, was raised in Defendant's Opposition to Plaintiff's Motion for Summary Judgment, here too the court grants summary judgment on a conditional basis in favor of Defendant

with respect to Count Two. The court hereby grants Plaintiff 10 days from the date of this Order to show cause as to why summary judgment in favor of Defendant is not appropriate given Plaintiff's final absence.

## IV. CONCLUSION

For the reasons set forth above, the court denies Plaintiff's Motion for Summary Judgment in its entirety. Defendant's Motion for Summary Judgment is granted in part and denied in part. With respect to Count One, Defendant's Motion is denied as to Plaintiff's interference claim pursuant to 29 C.F.R. §§ 825.300(d)(6) and (e), and granted on a conditional basis as to Plaintiff's claim of entitlement to FMLA time under 29 U.S.C. § 2615. With respect to Count Two, Defendant's Motion for Summary Judgment is granted on a conditional basis. The court hereby grants Plaintiff 10 days from the date of this Order to respond to this court's conditional grants of summary judgment in favor of Defendant with respect to Counts One and Two.

The court hereby sets the trial date in this action for January 10, 2012, at 9:00 a.m. A final pretrial conference shall be held on November 3, 2011, at 2:00 p.m. A separate trial order shall issue.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 28, 2011