UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTE GARDNER, | ) | Case No.: 1:10 CV 183 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| GREAT LAKES CHEESE CO., INC., | ) | |
| | ) | |
| Defendant | ) | ORDER |

Plaintiff Annette Gardner ("Plaintiff" or "Gardner") brings the instant action against Defendant Great Lakes Cheese Co., Inc. ("Defendant" or "GLC") pursuant to the Family Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §§ 2601–2654.  Both parties filed Motions for Summary Judgment.  On September 28, 2011, this court denied Plaintiff's Motion for Summary Judgment (ECF No. 12) in its entirety.  (Order, ECF No. 21.)  With respect to Defendant's Motion (ECF No. 11), the court denied summary judgment on Gardner's claim for interference with FMLA rights stemming from GLC's alleged failure to provide notice of available FMLA leave time, but granted summary judgment on a conditional basis on Gardner's claims for entitlement to FMLA leave time and retaliation.  (*Id.*)  The court's basis for abstaining from issuing final rulings on these claims was to provide Plaintiff an opportunity to respond to a point raised in Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  (ECF No. 20.)  Specifically, the court ordered Plaintiff to address the effect of her final alleged absence prior to her termination, which Defendant claimed would have placed her over her total leave entitlement even assuming Plaintiff's allegations of errors in Defendant's time records were true.  Plaintiff filed her brief on October 10, 2011 (ECF No.

23), and Defendant filed a Reply (ECF No. 26).  For the reasons set forth below, the court hereby denies Defendant summary judgment on Plaintiff's entitlement claim, but grants Defendant  summary judgment on Plaintiff's retaliation claim.

## I. FACTS AND PROCEDURAL HISTORY

Defendant GLC employs over 2,000 people nationwide, including roughly 500 at its cheese packaging facility in Hiram, Ohio.  (Def.'s App. at 58, 60, ECF No. 11-1.)  GLC is subject to the FMLA, which entitles qualifying employees to 12 weeks, or 480 hours, of unpaid leave each year. 29 U.S.C. § 2612(a)(1).  GLC notifies employees in writing that it uses a "rolling calendar method" to determine the 12-month period in which the 12 weeks of FMLA leave entitlement occurs.  (Toumert Dep. 10: 3–7, Def.'s App. at 57.)  Under this method, each time an employee takes FMLA leave, the remaining leave entitlement is the balance of the 12 weeks which has not been used during the immediately preceding 12 months.

At GLC, when an employee misses a day of work and does not have vacation, personal time, sick time or FMLA hours to cover the absence, he or she gets an attendance point.  Once an employee accumulates 10 points, he or she can be terminated for excessive absenteeism. (Toumert Dep. 14:20–15:5, Def.'s App. at 60–61; Barbe Depo. 29:21–23, 52:2–4, Def.'s App. at  14, 21; Rodman Dep. 22:18–20, Def.'s App. at 66.)

It is undisputed that Plaintiff worked at Defendant's Hiram facility, first as a transporter, and then as a line attendant, from 2005 until she was terminated in August 2009 for excessive absenteeism.  (Gardner Decl. ¶ 2, ECF No. 12-1. )  During the period between August 2008 and March 18, 2009, Gardner was employed as a transporter, and her schedule included working five nine-hour days per week for a total of 45 hours per week.  (Gardner Decl. ¶ 2, ECF No. 13-

-2-

5. ) During her time as a GLC employee, Plaintiff suffered from several medical conditions that limited her ability to attend work, including migraine headaches, a cervical disc displacement, and a lumbar disc displacement.  (Gardner Dep. 6:17–9:12, Def.'s App. at 34–37.)  With Defendant's approval, she used FMLA leave intermittently beginning in 2006 due to her own medical conditions and those of family members.  (*Id.*)  Defendant did not, and does not now contest the legitimacy of the conditions that resulted in Plaintiff's FMLA absences.  (Toumert Dep. 17, Def.'s App. at 62.)

Both Plaintiff and Defendant kept their own records of Plaintiff's FMLA leave usage.  (Barbe Dep. 11–15, Def.'s App. at 2–6; Gardner Depo. 22–26, ECF No. 15-3.)  To update and verify her records, Plaintiff occasionally asked management for updates on her available FMLA time.  In September of 2008, Plaintiff asked Employment Relations Specialist Stacey Barbe for a written update of her FMLA time.  (Gardner Decl. ¶ 4, ECF No. 12-1.)  Barbe advised Plaintiff that she would only provide Plaintiff with a written update if Plaintiff shared her personal records, which she did.  (*Id.*)  Barbe thereafter provided Plaintiff with a spreadsheet of FMLA time that Plaintiff had taken from October 2007 to September 16, 2008.  (*Id.*)  Some time in June of 2009, Plaintiff verbally requested an FMLA leave update from Barbe; Barbe provided a verbal response.  (Barbe Dep. 20:3–20:23, ECF No. 12-2.)  On or around July 20, 2009, Plaintiff verbally requested an FMLA update via telephone from Manager Bill Rodman; Rodman never responded, either verbally or in writing.  (Gardner Dec.  ¶ 6, ECF No. 12-1.)  Plaintiff made this request following her husband's brain surgery on July 18, 2009; she planned on using personal leave time as well as FMLA time to care for her husband.  (Gardner Dep. 22:12–23:4, ECF No. 15-3.)

On August 18, 2009, Plaintiff's employment was terminated by GLC management after Ms. Barbe updated employee absences into GLC's system and the software alerted her that Plaintiff had exceeded her FMLA leave. (Barbe Dep. 25:4–38:8, Def.'s App. at 10–15.) The decision to terminate Plaintiff was made after Ms. Barbe consulted with Plaintiff's Manager, Bill Rodman, and the Director of Human Resources, Mary Jo Toumert, and the company's attendance records were reviewed. (*Id.*) By Plaintiff's count, she took 445 hours of FMLA leave in the disputed 12-month span of August 11, 2008 to August 11, 2009. (Pl.'s Mot. for Summ. J, Ex. 7, Gardner FMLA Tracking Sheet, ECF No. 12-7.) By Defendant's count, based on employee records later consolidated into a spreadsheet, Plaintiff used 491.43 hours of FMLA leave in that span, exceeding GLC's 10-point maximum on August 11, 2009, for a total of 10.25 absence points. (Def.'s App. at 33.) Defendant's records indicate that Plaintiff incurred an additional 0.5 absence point on August 13, 2009, when Plaintiff took 3.2 hours of unavailable leave time, placing her at total of 494.63 FMLA hours in a 12-month span. (*Id.*) According to Defendant, Plaintiff first exceeded the 480 hours maximum on July 24, 2009, but she remained employed because noone at GLC noticed at that time. (Barbe Dep. 48:2–11, 53:7–11, Def.'s App. at 18, 22.)

On January 26, 2010, Plaintiff filed the instant suit, alleging violations of the FMLA. (Compl., ECF No. 1.) Plaintiff's Complaint consists of two counts. Count One alleges Defendant interfered with her rights under the FMLA by (a) not providing her with notice of her total FMLA hours following a request to a plant manager, and (b) by firing her for excessive absenteeism even though Plaintiff had available FMLA time to cover absences on August 10 and 11, 2009. (Compl. ¶¶ 14–20.) Count Two alleges Defendant retaliated against

Plaintiff by terminating her because she took legally protected medical leave under the FMLA, and that Plaintiff was terminated pursuant to a discriminatory policy.  (*Id.* ¶¶ 21–27.)

Both parties filed Motions for Summary Judgment–Defendant on November 24, 2010 (ECF No. 11), and Plaintiff on December 6, 2010.  (ECF No. 12.)  Plaintiff's Motion included declarations from two former GLC employees regarding difficulties they faced in obtaining FMLA time updates from Human Resources, particularly from Ms. Barbe.  (Decl. of Darcell Hobbs, ECF No. 12-8; Decl. of Gene Robert Lilly, ECF No. 12-9.)  On September 28, 2011, this court denied Plaintiff's Motion for Summary Judgment in its entirety.  (Order, ECF No. 21.)  The court also denied summary judgment in favor of Defendant on Plaintiff's claim for interference based on GLC's failure to provide a requested update of FMLA hours.  (*Id.*)  The court did not reach a final decision concerning Plaintiff's remaining claims in order to provide Plaintiff an opportunity to address Defendant's argument, raised in its Reply, concerning the effect of Plaintiff's final absence.  Plaintiff filed a brief addressing the argument (ECF No. 23), and Defendant filed a Reply. (ECF No. 26.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the

-6-

nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

## III. LAW AND ANALYSIS

### A. The Family Medical Leave Act

The FMLA permits employees to take up to twelve weeks of unpaid leave annually if they have a serious health condition, or if they need to care for a relative with a serious health condition. 29 U.S.C. § 2612(a)(1)(A)–(E). FMLA leave may be taken in blocks of time or intermittently. *Id.* at § 2612(b). An employer may require an employee requesting leave to provide certification from a doctor documenting the need for FMLA leave. *Id.* at § 2613(a).

By regulation, employers are subject to certain employee notice requirements. Pursuant to 29 C.F.R. § 825.300(d)(6),

> The employer must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement. . . . The notice of the amount of leave counted against the employee's FMLA entitlement may be oral or in writing. If such notice is oral, it shall be confirmed in writing, no later than the following payday (unless the payday is less than one week after the oral notice, in which case the notice must be no later than the subsequent payday).

-7-

29 C.F.R § 825.300(d)(e) further provides that

> Failure to follow the notice requirements set forth in this section *may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights*. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered (*see* § 825.400(c)).

(emphasis added).  Additionally, covered employers who have FMLA-eligible employees are subject to certain record-keeping requirements, and must maintain records that must disclose, *inter alia*, dates on which FMLA leave is taken, the hours of leave taken if leave is taken in increments of less than one full day, and records of any dispute between the employer and employee concerning the designation of leave as FMLA leave time.  *See* 29 C.F.R. § 825.500(c)(1)–(7).

Two distinct theories of recovery arise under the FMLA: interference (also called "entitlement") and retaliation (also called "discrimination").  *See Arban v. W. Publ'g Co.*, 345 F.3d 390, 400–401 (6th Cir. 2003) (explaining both theories of recovery). To establish a case of interference, an employee must show:

> (1) he is an "eligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "employer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); 29 U.S.C. § 2615(a)(1) (interference with rights).  To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she was engaged in FMLA-protected activity; (2) the employer knew that she was exercising her rights under the FMLA; and (3) after learning of the employee's exercise

-8-

of FMLA rights, the employer took an employment action adverse to her; and (4) there is evidence of a causal connection between the protected FMLA activity and the adverse employment decision.  *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban*, 345 F.3d at 404); 29 U.S.C. § 2615(a)(2) & (b) (discrimination).

In the absence of direct evidence of retaliation, the court applies the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).  First, the plaintiff must establish a *prima facie* case of retaliation, demonstrating that: (1) she was engaged in FMLA-protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity.  *Id.*  Second, if the plaintiff makes a *prima facie* showing, the burden shifts to the defendant to demonstrate evidence of a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  Third, if the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate the defendant's stated reason is a pretext for unlawful discrimination.  *Id.*

### B. Plaintiff's FMLA Claims

#### *i. Entitlement Claim*

In her Complaint, Plaintiff alleges that she was terminated in August of 2009 "after she took two FMLA-protected days off work on August 10 and August 11."  (Compl. ¶ 11.) Plaintiff alleges that she had sufficient FMLA leave time available to cover those absences. (*Id.* ¶ 12.)  Defendant moved for summary judgment with respect to this claim, asserting that Gardner exhausted her FMLA leave in July of 2009, but that GLC did not catch this until August, when GLC's system alerted Human Resources that Gardner exceeded her available

-9-

leave time, and after Human Resources double-checked its records. (Def.'s Mot. for Summ. J,

Mem. in Supp. at 7–8, ECF No. 11 (citing Barbe Depo. 47:2–48:11, Def.'s App. at 17–18.).)

Plaintiff's response is two-fold.  First, Gardner averred that she kept very careful track

of her FMLA leave usage by writing down her hours on a chart provided to her by Ms. Barbe

in September 2008, and that according to her own records, she only took a total of 445 FMLA

hours from August 11, 2008 to August 11, 2009.  (Gardner Dec. ¶¶ 4–7, ECF No. 13-1.)

Second, Plaintiff contested certain individual entries in Defendant's time records, and argued

that even if the court were to rely on Defendant's records, 12.59 hours were improperly levied

against Plaintiff, which would have placed her at 478.84 FMLA hours after her August 11,

2009 absence, under her 480 hours entitlement. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at

6–13, ECF No. 13.)

In its Reply, Defendant raised no objection to Plaintiff's affidavit, but instead focused

on Plaintiff's argument concerning discrepancies in Defendant's time records.  Defendant

argued that, even assuming Plaintiff is correct that 12.59 hours were improperly levied against

Plaintiff, placing her at 478.84 hours after her August 11, 2009 absence, Plaintiff nevertheless

exceeded her FMLA leave entitlement when she missed an additional 3.2 hours on August 13,

2009, placing her total leave time at 482.04 hours.  In its previous Order, the court provided

Plaintiff an opportunity to respond to this additional point.

Plaintiff argues that this final absence does not affect its position that the court should

deny Defendant summary judgment because according to Plaintiff's own records, the final

alleged FMLA absence on August 13, 2009 "would place Plaintiff, at most, at 448.2 FMLA

hours for the prior year . . . well below the 480 FMLA hours to which she was legally entitled."

(Pl's Br. in Resp. at 2, ECF No. 23.)  Alternatively, Plaintiff argues that Defendant's records

contain "discrepancies, irregularities, and incorrect notations" that demonstrate that a material

issue of fact exists as to whether Plaintiff had exceeded her available FMLA leave time prior

to her termination.  (*Id.* at 2–3.)  In its Reply, Defendant argues that summary judgment should

be granted in its favor because its records show that the Plaintiff exceeded her leave in July of

2009, but that it did not catch this until August of 2009.  (Def.'s Reply at 2–3, ECF No. 26.)

Defendant argues that under *Coker v. McFaul*, 247 F. App'x 609 (6th Cir. 2007), Defendant

could have been terminated for any additional leave taken after Plaintiff had exceeded her

available leave.  (*Id.* at 3.)

The court agrees with Plaintiff that a genuine issue of material fact exists concerning

her entitlement to FMLA leave time.  Assuming Plaintiff's records are true, she had more than

enough time to cover the final alleged absence on August 13, 2009.  Thus, Defendant's

argument concerning Plaintiff's final absence is a moot point for summary judgment purposes.

Further, Defendant's contention that the Sixth Circuit's decision in *Coker v. McFaul*, 247 F.

App'x 609 (6th Cir. 2007), is controlling and forecloses Plaintiff's FMLA entitlement claim is

not well-taken.  Defendant overlooks a critical fact in that case: the parties in *Coker stipulated*

to plaintiff's total FMLA leave time.  *Id.* at 613 ("The Stipulations establish that defendant

granted plaintiff over 600 hours of excused absences in the preceding 12-month period based

on his FML status at the point in June 2004 when plaintiff's accumulated AWOL hours reached

and exceeded the 48-hour ceiling that required removal under the Attendance Policy.")

Because these material facts were actually undisputed, the court held that the district court's

grant of summary judgment in favor of the defendant was appropriate because plaintiff was

"unable . . . to demonstrate that his employer denied him FMLA benefits to which he was

entitled."  *Id.* at 619–20.

-11-

In this case by contrast, the parties have not reached any agreements concerning Gardner's attendance records, and indeed, Plaintiff contests the accuracy of certain entries in Defendant's time records and avers that she kept careful track of her FMLA time. In ruling on a summary judgment motion, the court does not weigh evidence or make credibility determinations. Further, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes*, 398 U.S. at 158–59). The court denies Defendant summary judgment on Plaintiff's entitlement claim because "[d]etermining the accuracy of each side's assertions about time added, time subtracted and the total that results requires the resolution of disputed material facts, a task reserved to the jury." *Weidner v. Unity Health Plans Ins. Corp.*, 606 F. Supp. 2d 949, 959 (W.D. Wis. 2009).

### ii. Retaliation Claim

Having found that a triable issue of fact exists concerning Plaintiff's entitlement to FMLA leave, the court turns to Plaintiff's claim that she was terminated in retaliation for exercising her rights under the FMLA. Defendant moved for summary judgment on this claim as well, arguing that even assuming Plaintiff was entitled to FMLA leave at the time of her termination, her claim fails because she has not proffered any evidence that demonstrates a causal connection between the exercise of her FMLA rights and her termination. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 14, ECF No. 11.) Defendant notes that the only evidence Plaintiff provides in support of this claim are that a "few co-workers had a bad attitude when she left work on FMLA leave" but that "none of these employees had input into the decision to terminate Ms. Gardner." (*Id.* (citing Gardner Depo. 47:18–25, 48:1–9, 24–25; 49:1–8, Def.'s App. at 47–49.) In proving a causal connection between her termination and the exercise of FMLA rights, the plaintiff must show that requesting or using FMLA leave time was "a

-12-

determining or motivating factor" in the employer's decision. *Gibson v. City of Louisville*, 336 F.3d 511, 514 (6th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,153 (2000).

In her Opposition, Plaintiff argues that summary judgment is precluded by her allegations of discrepancies and errors in Defendant's time records, and certain statements Ms. Barbe made in her deposition:

> Q. What is the company's policy on that if somebody gets terminated for attendance, can they be eligible for rehire?
> A. No.
> Q. Is that a written policy or is that just the way it is?
> A. It's the formula here. If someone reaches termination, they're not going to be an excellent worker because in order to be an excellent worker you have to be at work. So they couldn't reach the rehire criteria . . . .

(Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. at 15, ECF No. 13 (citing Barbe Dep. 31:1–11, ECF No. 13-2).)

Upon review of the record in this case, the court finds that Defendant is entitled to summary judgment on Plaintiff's retaliation claim. Even assuming that Plaintiff has established a *prima facie* case, the Defendant has proffered evidence of a legitimate non-discriminatory reason. The record in this case shows that Plaintiff was terminated when Defendant's attendance tracking system alerted the company that Plaintiff had exceeded her available leave time in July of 2009, and that the system's report was double-checked by the Human Resources Department, which resolved any possible conflicts in the record in the employee's favor. Plaintiff has not pointed to any evidence that Defendant's proffered reason–good-faith reliance on its attendance tracking system–was pretext for unlawful discrimination. The deposition statements quoted above do not "demonstrate[] an open hostility towards employees who take FMLA leave" as Plaintiff argues, (Pl.'s Mem. in Opp'n at 15), but rather concern the

-13-

ramifications of GLC's attendance point system, which Defendant claims Plaintiff exceeded.

Indeed, it is undisputed that Plaintiff had used intermittent FMLA leave as far back as 2006,

and that GLC did not dispute the legitimacy of any of the conditions giving rise to Plaintiff's

numerous requests for FMLA leave.  Accordingly, the court grants summary judgment in favor

of Defendant on Plaintiff's retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, the court denies Defendant summary judgment on

Plaintiff's FMLA entitlement claim, but grants summary judgment in its favor on Plaintiff's

retaliation claim.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

December 22, 2011